PETER D. KEISLER
Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8470

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES except *Al-Haramain v. Bush* (07-109); *CCR v. Bush* (07-1115); *United States v. Farber* (07-1324); *United States v. Adams* (07-1323); *United States v. Palermino* (07-1326); *United States v. Volz* (07-1396) | **No. M:06-cv-01791-VRW**<br><br>**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO PRESERVE EVIDENCE**<br><br>Judge: Hon. Vaughn R. Walker<br><br>Date:       November 15, 2007<br>Time:       2 p.m.<br>Courtroom: 6 - 17th Floor |

**TABLE OF CONTENTS**

PAGE

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    THE LAW REQUIRES PLAINTIFFS TO DEMONSTRATE THE NEED FOR A PRESERVATION ORDER UNDER THE PARTICULAR FACTUAL CIRCUMSTANCES OF THE CASE.. . . . . . . . . . . 6

    II.    INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE IS NEEDED TO ADDRESS PRESERVATION ISSUES HERE, AND PLAINTIFFS' PROPOSED BLANKET ORDER IS OTHERWISE UNFOUNDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.    THE GOVERNMENT'S CLASSIFIED SUBMISSION ALLOWS FOR A REASONABLE AND PRACTICAL ALTERNATIVE FOR ADDRESSING PRESERVATION ISSUES. . . . . . . . . . . . . . . . . . . . . . . 12

    IV.    THE COURT SHOULD DEFER A HEARING ON PLAINTIFFS' MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASE**                                                                                                                    **PAGE(S)**

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*,
    220 F.R.D. 429 (W.D. Pa. 2004). ................................................................ 7, 8, 9, 12, 13

*Cunningham v. Bower*, 1989 WL 35993 (D. Kan. Mar. 21, 1989)............................................. 7

*Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39 (E.D. La. 1966)..................................... 7

*Madden v. Wyeth*, 2003 WL 21443404 (N.D. Tex. April 16, 2003)............................................ 7

*Pepsi-Cola Bottling Co. of Olean v. Cargill*, 1995 WL 783610
    (D. Minn. Oct. 20, 1995)..................................................................................... 7

*Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (Ct. Fed. Cl. 2004)...................................... 7

*Treppel v. Bovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006). ........................................ 7, 8, 12, 13

*Walker v. Cash Flow Consult.*, 200 F.R.D. 613 (N.D. Ill. 2001).................................................. 7

*Williams v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 144
    (D. Mass. 2005)................................................................................................... 7

## STATUTES

50 U.S.C. § 1806(f).................................................................................................... 2, 13

Pub. L. 86-36, codified as a note to 50 U.S.C. § 402................................................................ 12

# INTRODUCTION

Plaintiffs' Motion for an Order to Preserve Evidence ("Pl. Pres. Mot.") misstates the differences between the parties on document preservation issues and seeks to impose a blanket injunctive order on the Government and telecommunication Carrier Defendants ("Carrier Defendants") that is unwarranted under the governing legal standards. The Government and Carrier Defendants recognize that they have legal obligations to preserve potentially discoverable materials. Contrary to the Plaintiffs' claim, however, neither the Government nor any Carrier Defendant has asserted that "the state secrets privilege somehow modifies the preservation obligation." *See* Pl. Pres. Mem. at 3-5. Instead, the crux of the issue is a practical one, arising from the nature of Plaintiffs' claims and the Government's assertion of the state secrets privilege. The Government proposed a practical solution to that problem, an approach which the Plaintiffs have rejected.

As the Court is aware, Plaintiffs' claims put directly at issue alleged classified intelligence activities of the National Security Agency ("NSA"), and the United States has asserted the state secrets privilege in all cases that have not been stayed. Nevertheless, Plaintiffs have demanded that the Carrier Defendants affirm that they are preserving potentially relevant evidence despite the fact that the carriers' role in the alleged foreign intelligence activities at issue—indeed, the very existence of certain alleged activities themselves—could not be confirmed or denied in light if the state secrets privilege assertion by the United States.

Document preservation issues are, of course, inherently factual—requiring the identification of information and information systems that may exist, a discussion of their relevance to the claims, and an agreement on the appropriateness of preservation steps. To address this problem—the existence of preservation obligations but no ability to discuss their actual application to the facts of this litigation—the Government proposed a practical solution: without the need for any motion, we would advise the Court through a classified *in camera*, *ex parte* submission of the facts concerning the preservation of potentially relevant evidence that may exist in this case, if any. In this manner, the state secrets privilege would not be compromised by attempting to discuss and resolve preservation obligations. Plaintiffs initially

appeared to agree with this approach, but ultimately rebuffed it and now seek an unworkable blanket preservation order, without any factual foundation as to whether one is even necessary or would be properly tailored to the claims and any evidence that may be potentially relevant to them.

Plaintiffs' motion should be denied. Under the applicable legal standards (nowhere discussed in their motion), Plaintiffs must demonstrate the need for a preservation order by showing that there is an actual, not speculative, risk that evidence may be spoliated, and they must also justify the particular burdens that their order may impose. Plaintiffs fail entirely to establish the need for such an order, but even if they had established such a need, the terms of any order still could not be adjudicated properly without the disclosure of information protected by the state secrets privilege.

The Government's proposed approach is far more reasonable. As we have consistently proposed to the Plaintiffs, the United States is submitting with this Opposition, for the Court's *in camera*, *ex parte* review, a classified record concerning how potentially discoverable information, if any, is being preserved. In unclassified terms, the Government's submission shows that, if any potentially relevant information exists as to any allegation—and there may be no such evidence as to some or all the claims, and no evidence as to some or all of the alleged Carrier Defendant participants—then appropriate preservation steps are being taken. If the Court has any questions about the matter, the Government can address them through secure channels. But, in light of the Government's presentation, the Court can and should avoid the need to resolve Plaintiffs' motion and should not impose Plaintiffs' blunt order.[1/]

Finally, the parties also differ as to whether the Court should hold a hearing on Plaintiffs' motion (currently noticed for November 15, 2007). If the Court wishes to hear the unclassified issues raised by this motion at a hearing, the Government would of course be quite willing to

---

[1] To be clear, the Attorney General is not invoking nor conceding that the procedures set forth at 50 U.S.C. § 1806(f) of the Foreign Intelligence Surveillance Act are applicable to this matter in order to permit or enable adjudication of Plaintiffs' motion, as Plaintiffs suggest would be permissible. *See* Pl. Pres. Mot. at 2, n. 3.

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                                                2

address them. But any hearing would either risk the disclosure of privileged information or, more likely, be reduced to a recitation of general legal arguments without the factual context. Particularly where the outcome of the *Hepting* appeal may obviate the need to consider the matter, or impact the scope of any preservation issue, we respectfully submit that no hearing should be held at this time.

## BACKGROUND

Plaintiffs' counsel first raised the issue of a preservation order at hearing on November 17, 2006. *See* Declaration of Anthony J. Coppolino, ¶ 2 ("Coppolino Decl.") and Exhibit 1 thereto, *Transcript* at 99-102 (11/7/06). Counsel for AT&T and the United States advised the Court that the parties had not yet conferred on the matter and that they could not discuss it further without considering the impact of the state secrets privilege.[2] *See id.* & Trans. at 100, 101. Plaintiffs agreed to confer on the matter. *See id.*, Trans. at 102.

The parties next conferred in a telephone conference on December 19, 2006. *See* Coppolino Decl. ¶ 3. At that time, the Government expressed its concern that, because the allegations in these cases concern alleged intelligence activities that have not been confirmed or denied, including any alleged role of the Carrier Defendants, the parties would be unable to discuss the specific facts required to develop a preservation order. *See id.*; *see also* Manual for Complex Litigation at § 11.442 (setting forth the kinds of issues parties should discuss). Nonetheless, the parties agreed to continue conferring, and Plaintiffs' counsel agreed to circulate

---

[2] As counsel for AT&T explained:

> Again, the devil is in the details. Certainly if . . . our attention is being drawn to Rule 26 and to the upcoming changes to Rule 26, we are familiar with it and we're pleased to abide by it. But there's a lot in there. For example, the new rules contemplate a meet and confer in which we'd sit down and discuss electronic architecture and things like that. We're not in a position to discuss electronic architecture relevant to this case with plaintiff's counsel for state secrets reasons. . . . So, if . . . we're just being told to please follow the preservation aspects of Rule 26, yes, we understand that. We'll obviously do it.

Trans. at 100 (statement of Mr. Ericson); *see also id.* at 100-01 (statement of Mr. Nichols for the Government "echo[ing]" Mr. Ericson's comments and making clear that the Government understood the obligations of Rule 26).

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                                       3

a proposed preservation order. *See id.*

On January 8, 2007, Plaintiff's counsel transmitted to the Government and counsel for the Carrier Defendants a copy of a proposed preservation order. *See* Coppolino Decl. ¶ 4 and Exhibit 2 thereto. The Government responded on February 8, 2007 and again expressed the Government's concern that the factual discussion needed to develop a preservation order, as outlined in the Manual for Complex Litigation, was not possible in light of the Government's state secrets privilege assertion. *See* Coppolino Decl. ¶ 5 and Exhibit 3 thereto. The Government stated that it was not suggesting that any relevant evidence in this case need not be preserved, but that, because of the Government's state secrets privilege assertion, the parties are unable to discuss "whether and to what extent information that may be relevant exists, where any such information may reside, how it may be preserved, and whether there are any practical burdens arising from plaintiffs' proposed preservation steps—all of which should be undertaken before a preservation order is entered." *See id.* The Government also specifically discussed Plaintiffs' draft order, and noted that it did not describe the type of records the Plaintiffs believe the order should cover, except for a general reference to "information relevant to electronic surveillance," and that, in light of the state secrets privilege assertion, the parties would be left to speculate whether relevant information exists that should be covered by the order and whether any such information could be preserved as Plaintiffs propose without undue disruption.[3] *See id.* Based on these concerns, the Government indicated that "the prudent course would be for the Government to address the matter with the Court through an *ex parte, in camera* submission." *See id.*

On April 30, 2007, Plaintiffs' counsel again requested confirmation of the Government and Carrier Defendants' preservation obligations. *See* Coppolino Decl. ¶ 6 and Exhibit 4 thereto. The Government responded on June 29, 2007, and reiterated its concern at attempting to reach an understanding on this matter in a vacuum since the parties could not discuss with Plaintiffs the

---

[3] The proposed order transmitted by Plaintiffs appeared to be a "sample" preservation order derived from a treatise or handbook, as indicated by the "1994" proposed date of entry on the last page. *See id.*, Exhibit 2.

United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence
MDL No. 06-1791-VRW                                                                                          4

existence, nature, or scope of any information that might be at issue, as well as the preservation steps that might be applicable. Coppolino Decl. ¶ 7 and Exhibit 4 thereto. The Government stated that it did "understand that parties to litigation have obligations to take steps to preserve their relevant evidence," and indicated a willingness to discuss the issue further. *See id.*

On July 13, 2007, Plaintiffs' counsel directed renewed questions at both the Government and Carrier Defendants concerning their preservation obligations. Coppolino Decl. ¶ 8 and Exhibit 5 thereto. Plaintiffs indicated that they "are not asking for the government or the carriers to admit, even by implication, that any relevant document exists," but sought to determine if the parties agreed about the legal requirements to preserve relevant evidence. *See id.* The Plaintiffs specifically asked the Government what it understood its preservation obligations to include, and asked the Carrier Defendants to "provide an affirmative confirmation that they will abide by their duties to ensure that information that is likely to lead to the discovery of admissible evidence in this case is preserved." *See id.*

The Government responded to Plaintiffs' renewed questions on August 2, 2007, and indicated that attempting to reach a general understanding as to what the law provides would not be appropriate "where there can be no confirmation of any allegation and no meeting of the minds as to how legal requirements may apply in these particular cases." Coppolino Decl. ¶ 9 and Exhibit 6 thereto. Rather than continuing to debate the issue, the Government proposed that, without the need for any motion by the Plaintiffs, and without confirming or denying any allegation or whether relevant documents even exist, the Government would file with the Court for its *in camera*, *ex parte* review facts concerning the preservation of information (if any) that may be relevant in these lawsuits. *See id.* The Government proposed that Plaintiffs would then have an opportunity to submit their position on the legal requirements concerning document preservation issues, and sought to work with Plaintiffs on a schedule for these submissions. *Id.*

Plaintiffs initially appeared to agree to this proposal. *See* Coppolino Decl. ¶ 10 and Exhibit 7 thereto (indicating that Government's proposal "is generally acceptable to [Plaintiffs], although we will definitely be filing a memorandum."). In subsequent communications, however, Plaintiffs indicated they would file a motion seeking a preservation order and would

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                                      5

notice a hearing on the issue. *See id.*, Exhibits 8 and 9 thereto. On September 10, 2007, the Government proposed to Plaintiffs a stipulation setting forth the background of the issue and proposing a schedule for briefing the Plaintiffs' motion, but leaving the question of whether a hearing on the matter was necessary to the Court. *See* Coppolino Decl. ¶ 12 and Exhibit 10 thereto. Plaintiffs declined to enter into this stipulation, *see id.* ¶ 13 and Exhibit 11 thereto, and on that same date filed the instant Motion for an Order to Preserve Evidence.

## ARGUMENT

Plaintiffs' motion, which seeks an indiscriminate "one size fits all" preservation order, is unfounded. The law governing the issuance of preservation orders requires the moving party both to demonstrate that such an order is needed and to address any burdens imposed by specific preservation obligations. The Manual for Complex Litigation also makes clear that preservation issues are inherently factual, and requires the parties to discuss in detail the specific information and information systems that would be subject to preservation obligations.

Plaintiffs' motion does not and cannot make the showing required to obtain a preservation order; indeed, they have proffered no evidence suggesting that the parties are not preserving relevant evidence (if any). In addition, in light of the Government's state secrets privilege assertion, it simply is not possible to discuss the key issues relating to a preservation order, such as the identification of any information and information systems that may be relevant, the steps that have been taken to preserve information, and the burdens associated with imposing additional obligations. To address the preservation issue without the need to resolve Plaintiffs' motion, the United States submits for the Court's *in camera*, *ex parte* review facts concerning whether information relevant to the allegations exists and, if so, how it is being preserved. In no event, however, should Plaintiffs' motion for a blanket preservation order be granted, for it is unfounded as a matter of law and cannot be resolved without state secrets.

I.  **THE LAW REQUIRES PLAINTIFFS TO DEMONSTRATE THE NEED FOR A PRESERVATION ORDER UNDER THE PARTICULAR FACTUAL CIRCUMSTANCES OF THE CASE.**

In support of their motion for a preservation order, Plaintiffs cite the Manual for Complex Litigation and various cases holding that parties have a duty to preserve evidence, *see* Pl. Pres.

Mem. at 1. They then observe in a footnote that "[t]he Court has authority to issue such preservation orders." *See id.*, n 1. But nowhere do Plaintiffs analyze or apply the legal standards for the relief they seek.

The law is clear that motions to preserve evidence turn on whether specific facts are put forward which demonstrate that such a order is necessary. In the only pertinent case Plaintiffs cite, *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 434 n. 2 (W.D. Pa. 2004), the district court held that "[a]n evaluation of a motion for a preservation order . . . demands application of a separate and distinct test, which can be formulated by molding the factors used in granting injunctive relief with the considerations, policies and goals applicable to discovery." *Id*. at 433. The court set forth a three part balancing test for deciding such a motion:

(1) The level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence;

(2) Any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and

(3) The capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Id.* at 433-34. *Accord Treppel v. Bovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) (utilizing similar test). *See also Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (Ct. Fed. Cl. 2004) (applying two prong test requiring "one seeking a preservation order demonstrate that it is necessary and not unduly burdensome"); *Williams v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 144, 147 (D. Mass. 2005) (same); *Walker v. Cash Flow Consult.*, 200 F.R.D. 613, 617 (N.D. Ill. 2001) (same).[4]

---

[4] Some courts have held that a party seeking a preservation order must meet the traditional standards for obtaining injunctive relief. *See Madden v. Wyeth*, 2003 WL 21443404, at *1 (N.D. Tex. April 16, 2003); *Pepsi-Cola Bottling Co. of Olean v. Cargill*, 1995 WL 783610, at *3-4 (D. Minn. Oct. 20, 1995); *Cunningham v. Bower*, 1989 WL 35993, at *1 (D. Kan. Mar. 21, 1989); *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 42-43 (E.D. La. 1966). As noted in *Capricorn Power*, the balancing test applies the principles of injunctive relief in a discovery context and requires the moving party to demonstrate the need for an order, balanced against its potential harm. Regardless of the standard employed by the Court, Plaintiffs' motion

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                                           7

In applying these standards, the court in *Capricorn Power* observed that "*where the need expressed by the moving party for a preservation order is based upon an indefinite or unspecified possibility of the loss or destruction of evidence, rather than a specific, significant, imminent threat of loss, a preservation order usually will not be justified.*" *Id.* at 435 (emphasis added). The court went on to hold, based on the "facts currently before the court," that the moving party had failed to establish that evidence would be lost of destroyed in part because the documents at issue in fact had been preserved. *See id.* at 436. The court observed in particular that the information before it did not adequately address the burdens of maintaining information on a computer system. *See id*. at 437.

The court in *Treppel v. Bovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006), undertook a similar balancing approach in denying a motion seeking a preservation order. The court held that the party seeking a preservation order bears the burden of establishing the risk that evidence would be lost or that inadequate retention procedures were in place, and denied a motion to preserve evidence because the steps taken to preserve evidence were sufficient under the circumstances and because it lacked information concerning the burdens such an order would impose. *See id*. at 370-72. In such circumstances:

> Such a blanket preservation order may be prohibitively expensive and unduly burdensome for parties dependent on computer systems in their day-to-day operations. In addition, a preservation order will likely be ineffective if it is formulated without reliable information from the responding party regarding what data-management systems are already in place, the volume of data affected, and the costs and technical feasibility of implementation.

*Id*. at 372 (citing Manual for Complex Litigation, Fourth §11.442 at 73 (2004)).[5/]

---

should be denied.

[5] The Manual for Complex Litigation cited in *Treppel* makes clear that the specific facts underlying a preservation order should be addressed before an order is entered. *See* Manual for Complex Litigation, Fourth § 40.25 (2). The Manual states that "[s]uch an order requires the parties to define the scope of the contemplated discovery as narrowly as possible, identify the particular computers or network servers affected, and agree on a method for data preservation . . . ." *Id.* Among the points to consider in formulating an effective preservation order are whether the order might disrupt the operation of computers and computer networks in the routine course of business. *See id*. The Manual observes that "[a] blanket preservation order may be

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                              8

It is thus well-established that a preservation order must be based, at a minimum, on a specific factual showing that such an order is necessary to prevent the imminent destruction of evidence and will not impose an undue burden. Plaintiffs' have presented no evidence regarding either element necessary before the entry of a preservation order.

## II.   INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE IS NEEDED TO ADDRESS PRESERVATION ISSUES HERE, AND PLAINTIFFS' PROPOSED BLANKET ORDER IS OTHERWISE UNFOUNDED.

It should require little elaboration as to why the very nature of the allegations in these cases prevent the parties from discussing and resolving the specific terms of their preservation obligations. In an ordinary case, before such an order is entered, the parties must define with particularity the scope of the discovery sought and specifically address several basic issues, including what different types of potentially relevant information exist; where it is located; how it is being preserved; whether those steps are adequate; or whether additional steps are necessary or would be unduly costly or burdensome. Blanket preservation orders not tailored to the specific evidence that may be at issue, and information systems where it may reside, are not appropriate even in more routine civil litigation. *See Capricorn Power*, 220 F.R.D. at 435 (holding that "reflexive, invariable judicial action in response to each motion for preservation of evidence would be impracticable and would trivialize the need for preservation orders in truly justifiable circumstances.").

The cases at issue in this proceeding are clearly not routine. Plaintiffs' claims put directly at issue alleged classified intelligence activities of the National Security Agency, and the Government's state secrets privilege assertion seeks to preclude disclosure not only of whether certain alleged activities are occurring, but also whether the Carrier Defendants had any involvement in them. Specifically, the Government has asserted privilege over facts that would be necessary to disprove Plaintiffs' allegations of a "dragnet" of surveillance of the content of

---

prohibitively expensive and unduly burdensome for parties dependent on computer systems for their day-to-day operations." *Id.* The Government identified the fact issues identified by the Manual in support of its view that agreement on the terms of an order was not possible in light of the states secrets privilege assertion. *See* Coppolino Decl., Exhibit 2.

United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence
MDL No. 06-1791-VRW                                                                                                  9

communications of millions of Americans, and over whether or not the NSA has collected telephone communication records from the specific Carrier Defendants, and over whether the Plaintiffs have personally been subjected to any intelligence gathering activity.[6]

Under these circumstances, the Government advised the Plaintiffs that conferring about basic document preservation issues was not possible. If an alleged activity has not been confirmed but does in fact exist, any indication that documents related to that activity exist and are being preserved would destroy the privilege assertion. If an alleged activity has not been confirmed or denied and, in fact, does *not* exist, there would be no documents to preserve, but neither the Government nor Carriers Defendants could so indicate. Even if the existence of an alleged activity has been confirmed, classified details would be implicated by any attempt to resolve the scope and burden of preservation obligations, including the identification of different types of information that may exist about the alleged activity (since not all may be potentially relevant to particular claims), where such information may be located, how any such information is being preserved, whether those methods are sufficient or whether other steps would pose practical burdens on intelligence operations. Addressing and resolving the preservation obligations here would also require disclosure of whether any Carrier Defendants provided the alleged assistance to NSA, including whether all, some, or none of the Carrier Defendants were involved, what types of potentially relevant information they may possess, if any, where it is located, and how it is being preserved. In short, under the unique circumstances presented in this case, resolving the specific scope of preservation obligations would require the disclosure of intelligence sources and methods subject to the state secrets privilege, even if merely to disprove the existence of potentially relevant evidence or the need for a preservation order.

---

[6] It bears noting that a threshold question in this litigation, raised by the Government's motions to dismiss or for summary judgment in the *Hepting*, *Verizon*, and *Shubert* cases, is whether this litigation can proceed without risking the disclosure of this information subject to the state secrets privilege, including whether Plaintiffs can even establish their standing without state secrets. Until the question of whether the state secrets privilege may require dismissal of some or all the pending claims is resolved, imposing Plaintiffs' blanket preservation order is not appropriate, particularly where, in the meantime, the Government can address preservation issues with the Court in a secure fashion without the need for an order.

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                                   10

It is no answer for Plaintiffs to contend that the parties could avoid these state secrets concerns by simply acknowledging their "legal obligations" to preserve evidence, and impose "litigation holds" as to what they should reasonably know is potentially relevant. *See* Pls. Pres. Mem. at 5-6. The Government and Carrier Defendants know what the law is, but legal obligations to preserve evidence do not exist in a vacuum—they must be applied to particular information and information systems in a particular fashion. Otherwise, the parties cannot confer and address, among other things: (i) the scope of contemplated discovery to be sought; (ii) specific information that may be potentially relevant; (iii) information systems subject to preservation; (iv) preservation steps that have been implemented; (v) additional preservation steps that may be necessary; and (vi) potential costs and burdens of preservation steps. The Federal Rules of Civil Procedure and Manual for Complex Litigation contemplate and require parties to confer on these preservation issues. But that is not possible in this case.[7]

Moreover, as discussed below, the preservation order Plaintiffs seek is not a mere acknowledgment of legal obligations, but would impose actual injunctive relief of an unknown scope or dimension on the Government and Carrier Defendants. The proposed order directs that all necessary steps be taken to prevent the destruction or alteration of what parties "know, or reasonably should know, will be relevant evidence in this litigation," and would further require the Government and Carrier Defendants to halt normal operation of information processing systems on which potentially relevant information may reside, or remove information from those systems and arrange for its duplication for later discovery. *See* Pls. Proposed Preservation Order ¶¶ 1, 3. Under such an order, the Government and Carrier Defendants would know only that they have an obligation to preserve some information of unknown scope in the manner prescribed, without any specific determination as to what information, if it exists, should be preserved nor

---

[7] The Government would stipulate that the parties are aware of their preservation obligations and, without confirming or denying any allegation or even the existence of any potentially relevant information, that whatever preservation steps might be appropriate are described in the Government's *in camera*, *ex parte* submission. But otherwise, Plaintiffs' proposed blanket preservation order is inappropriate.

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                                                                   11

any assessment of the cost and burden of doing so.[8] Plaintiffs' proposed order does not resolve such issues since any vital factual context is missing. The use of this kind of blunt instrument with unknown consequences is not supported by the law in normal circumstances. *See Treppel*, 233 F.R.D. at 372; *Capricorn Power*, 220 F.R.D. at 435; Manual for Complex Litigation, Fourth §11.442 (disapproving of blanket preservation orders).

### III. THE GOVERNMENT'S CLASSIFIED SUBMISSION ALLOWS FOR A REASONABLE AND PRACTICAL ALTERNATIVE FOR ADDRESSING PRESERVATION ISSUES.

As a practical way to address the matter, the United States has submitted, for the Court's *in camera*, *ex parte* review, a classified record of what information related to the allegations in this case exists, if any. *See* Classified *In Camera*, *Ex Parte* Supplemental Memorandum of the United States and accompanying Classified Declaration of the National Security Agency.[9] This is a far more reasonable approach under the unique circumstances here than the preservation order Plaintiffs demand. In unclassified terms, the Government's submission shows that, if any potentially relevant information exists as to any allegation—and there may be no such evidence as to some or all the claims, and no evidence as to some or all of the alleged Carrier Defendant participants—appropriate preservation steps, if any, are being taken. If the Court has any questions concerning this submission, the Government can address them with the Court through secure, *in camera*, *ex parte* proceedings.

But in no event could the Plaintiffs' establish the grounds for granting their motion. This

---

[8] Plaintiffs' assertion that the "vast majority" of the discovery they seek is against the carriers, or that Plaintiffs purportedly do not seek NSA records concerning whether or how NSA "analyzed, reviewed, minded or targeted" any of the communications or records that carriers may have made available, *see* Pl. Pres. Mem. at 2, is unavailing. First, despite this concession, the United States as an intervener would be subject to their proposed order without any such limitation. Second, this concession underscores the point that it is uncertain what the order would apply to if the allegations were true. Because of the parties' inability to confer about the matter, they cannot come to basic understandings about what information, if it exists, is potentially relevant to establishing claims or defenses. Notwithstanding the practical difficulty posed by these issues, the solution is not, as Plaintiffs request, to impose a blanket order on the Government and Carrier Defendants.

[9] The declaration is from a senior NSA official. However, the name of NSA officials are protected from disclosure generally under Pub. L. 86-36, codified as a note to 50 U.S.C. § 402.

**United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence**
**MDL No. 06-1791-VRW**                                                                    12

is the first discovery motion of this litigation as to which confirmation or denial of facts encompassed by the state secrets privilege would be necessary for any adjudication but are unavailable. Since the actual production of information to Plaintiffs is not presently at issue, the impact of the privilege on deciding this motion can be avoided for now because any assurances needed on the narrow issue of document preservation can be provided by the Government to the Court without the need to adjudicate the motion. However, to the extent Plaintiffs' request for an injunctive preservation order must be adjudicated, it should be denied because Plaintiffs cannot demonstrate the need for any such order nor address any impact it may have. *See Capricorn Power*; *Treppel, supra*.[10]

## IV.   THE COURT SHOULD DEFER A HEARING ON PLAINTIFFS' MOTION.

Finally, the United States submits that the hearing on Plaintiffs' motion presently scheduled for November 15, 2007 is unnecessary.

Preservation issues are inherently factual, and the facts central to resolving this motion could not be aired at a hearing. Among the questions that would need to be addressed are whether the Government and Carrier Defendants even possess potentially relevant evidence, what that evidence may be, where it may be located, what steps, if any, have been taken to preserve it, whether such steps are adequate, and whether other steps would be unnecessary or burdensome as to particular information or information systems. There is little point to holding a hearing since these issues cannot be aired—at least not without the risk of disclosing state secrets.

The outcome of the pending appeal in the *Hepting* case also may obviate the need for

---

[10] To reiterate, Plaintiffs' contention that the procedures set forth at 50 U.S.C. § 1806(f) of the Foreign Intelligence Surveillance Act are applicable to this matter is wrong. *See* Pl. Pres. Mot. at 2, n. 3. As the United States has previously set forth at length, Section 1806(f), on its face, applies to an entirely different circumstance that is not presented by Plaintiffs' motion: to address the lawfulness of surveillance acknowledged by the Government against an actual "aggrieved" person as defined by FISA. *See* Reply Memorandum of the United States in Support of Military and State Secrets Privilege and Motion to Dismiss or for Summary Judgment in the *Verizon* Cases, Dkt. No. 340 (MDL-1791) at 40-46. Section 1806(f) is not being invoked by the Attorney General to address the Plaintiffs' motion, and the Government does not waive the applicability of the state secrets privilege with respect to the adjudication of this motion.

United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence
MDL No. 06-1791-VRW                                                                                     13

considering the Plaintiffs' motion or alter the scope of the issues before the Court if Plaintiffs' claims are narrowed or limited in some fashion. For these reasons, the Government proposed to Plaintiffs that the parties leave for the Court to decide whether a hearing is needed—now or after the *Hepting* outcome. *See* Coppolino Decl. ¶ 12 and Exhibit 10 thereto. Plaintiffs nonetheless opted to place this discovery motion on the Court's docket at this time. We submit that a hearing is unnecessary in light of the foregoing, but in any event, any such hearing should be deferred at least until after the Ninth Circuit resolves the *Hepting* appeal.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preservation Order.

Dated:  October 25, 2007           Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

  */s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

  */s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782—Fax:  (202) 616-8470
tony.coppolino@usdoj.gov

*Attorneys for the United States*